IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CASE NO. 5:24-CR-73-FL-BM

| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN ANDREW EDWARDS | GOVERNMENT'S SENTENCING MEMORANDUM<br><br>**Redacted** |
|---|---|

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, respectfully submits this sentencing memorandum in support of the government's recommended sentence and to address Defendant's objections to the Presentence Investigation Report. The Defendant's objections and arguments ignore the overwhelming facts of this case and are unsupported by and contrary to the Sentencing Guidelines and the relevant case law. This Court should overrule the defendant's objections and impose a guideline sentence.

## FACTUAL SUMMARY

It ended with an Indictment charging numerous child sexual exploitation offenses; however, this investigation began with Defendant, a sworn law enforcement officer, sexually harassing and groping an inmate of the Harnett County Detention Center. On October 13, 2023, Krystal Jackson reported to the Harnett County Sheriff's Office that Defendant began harassing her when she was first booked into the jail and continued to do so while she was housed there. Ms. Jackson reported

1

Defendant showed her a video of himself masturbating. He returned to her cell later and showed her another video in which he was masturbating to ejaculation. When he returned to her cell a third time, she requested a tablet. He brought her one and, when he gave it to her, grabbed her breast.

The sheriff's office decided to place Defendant on administrative leave. Defendant was summoned to meet with Major G. McNeill. Defendant drove into the parking lot, dumped his Google Pixel cell phone in a hollowed-out tube of a dumpster, and then met with his supervisors. Major McNeill notified him that he was on administrative leave and directed him to surrender his patrol car, badge, identification card, security access card and assigned weapons. Major McNeill asked him if he had his personal phone, and Defendant lied and said he had left it at home. Lieutenant B. Strickland then drove Defendant home.

Major McNeill and Captain Woods collected Defendant's personal cell phone from the dumpster. It appeared to be powered off and was later found to have been factory reset before it was hidden in the tube of the dumpster.

On October 18, 2023, Detective Gardner obtained a search warrant for Defendant's residence. Investigators found a box and a receipt dated in 2022 for the Google Pixel phone. In a recorded interaction, when Defendant was asked if he had a personal phone, he said no. Special Agent Ludwig told Defendant they found the Google Pixel phone box and a receipt and asked where the phone was. Defendant said he did not know where that phone was and denied remembering even purchasing it.

On October 26, 2023, Special Agent Allen applied for, and was granted, a

search warrant for Defendant's Google account. In that account, Agent Allen found about two images and 21 videos depicting minors engaging in sexually explicit conduct.

Fourteen videos were a screen recording of live video chats on Omegle, a website synonymous with child sexual exploitation. In them, Defendant appeared in the upper-right-hand corner of the screen masturbating while children in the larger part of the screen exposed their genitals, masturbated, or inserted foreign objects into their genitals. Many recordings captured texts between Defendant and the children in which he asked about their ages and directed them to perform various sexual acts or expose parts of their body. The government's opposition to Defendant's motion to dismiss or withdraw his guilty plea, filed at Docket Entry 114, shows just how young those children appeared and describes more fully the Defendant's horrifying instructions for them to sexually abuse themselves.

The metadata for six of those videos was crisp enough for investigators to determine when the video was made, and those six videos became the production counts in the Indictment. Metadata shows they were recorded on February 28, 2022 (Count One); August 8, 2022 (Count Two); August 27, 2022 (Count Three); September 10, 2022 (Count Four); October 15, 2022 (Count Five); and November 5, 2022 (Count Six). Despite retaining a digital forensics expert to review the Google data,[1] Defendant has offered no other creation dates.

---

[1] [D.E. 75 at 3, 7].

## PROCEDURAL HISTORY

On February 29, 2024, Defendant was indicted on six counts of production of child pornography, 18 U.S.C. § 2251(a), (e); one count of receipt of child pornography, 18 U.S.C. § 2252(a)(2), (b); and one count of possession of child pornography 18 U.S.C. § 2252(a)(4)(B). [D.E. 1]. Defendant then filed a slew of pretrial motions that alleged inflammatory, baseless accusations of misconduct by ███████████████, a State Bureau of Investigation agent, government counsel, and a state superior court judge. [D.E. 36, 75, 81] In December, this Court granted his motion to suppress in one respect and otherwise denied his motions, making no misconduct findings. [D.E. 85]

On February 13, 2025, Defendant pleaded guilty to Count Three of the indictment, production of child pornography, [D.E. 92], which carries a maximum penalty of 30 years' imprisonment. Two months later, Defendant moved to withdraw his guilty plea, claiming, with zero evidence and in total contradiction to his sworn plea, that all fourteen Omegle video chats were AI deepfakes. Again this Court denied his motion. [D.E. 123]

The Presentence Investigation Report (PSR) details the Defendant's guidelines calculation under USSG §2G2.1. [D.E. 127]. His base offense level is 32, and U.S. Probation has applied the following enhancements:

- a 4-level enhancement for the material involving a prepubescent minor or a minor who has not attained the age of 12, USSG §2G2.2(b)(1)(A);
- a 2-level enhancement for the offense involving the commission of a sexual act or sexual contact, USSG §2G2.1(b)(2)(A);

4

- a 2-level enhancement for the use of a computer, USSG §2G2.1(b)(6)(B);

- a 2-level enhancement for obstruction of justice, USSG §3C1.1; and

- a 5-level enhancement for being a repeat and dangerous sex offender pursuant to USSG §4B1.5.

(PSR ¶¶ 39-47). Probation has decreased the offense level by 3 levels for acceptance of responsibility, yielding a total offense level of 44, capped at offense level 43. (PSR ¶¶ 48-50). Defendant's guideline range is life, capped by the statutory maximum of 360 months, or 30 years.

Defendant objects to most of those enhancements. He challenges the 2-level obstruction enhancement, claiming that wiping his phone was unrelated to the offense conduct. He argues that the government has not proven that the minor in Count Two was under 12; therefore, a 4-level enhancement does not apply. And he contests the repeat and dangerous sex offender designation, asserting that the government has "no evidence that these interactions were on occasions different from one another." [D.E. 126].

## ARGUMENT

The U.S. Probation Office has correctly applied the guidelines to Defendant's egregious offense conduct. His guidelines objections lack factual support and are simply another attempt to minimize his culpability. This Court should overrule his objections and impose a guidelines sentence: 30 years.

A. <u>Legal Standard for Sentencing Guideline Enhancements</u>

Relevant conduct includes "all acts and omissions committed…or willfully

5

caused by the defendant…that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3(a)(1)(A). Because production of child pornography is not an offense that groups pursuant to USSG §3D1.2(d), expanded relevant conduct does not apply and this Court should consider only the facts surrounding the offense of conviction, in this case Count Three. USSG §1B1.3(2), (3).

The Government bears the burden of proving any sentencing enhancement by a preponderance of the evidence. United States v. Simmons, 143 F.4th 200, 213 (4th Cir. 2025) (citing United States v. Henderson, 88 F.4th 534, 536 (4th Cir. 2023). The Court's factual determinations will only be disturbed for clear error. Id.

B. The Minor Child Depicted in Count Three Was under Twelve Years Old.

Defendant objects to the 4-level enhancement for an offense involving a minor who had not attained the age of 12, pursuant to USSG §2G2.1(b)(1)(A). This Court can judge for itself whether that child looks younger than a middle-schooler:



Her facial features and structure, her hairstyle (pigtails), and her lack of any breast development or pubic hair all suggest this child is under 12 years of age. The Government will be prepared at sentencing to provide the Court with the video of the

6

child's video interaction with Defendant so the Court can determine the likely age of this child.

Defendant objects that investigators originally estimated her age range at 10 to 12 years old. [D.E. 126 at 2] Investigators commonly give very conservative age ranges—especially around age 12—because to trigger a statutory enhancement for possession of child pornography, the government must prove beyond a reasonable doubt that the minor was prepubescent or under 12. *See* 18 U.S.C. § 2252(b)(2). The standard at sentencing is preponderance of the evidence, however, and this Court as factfinder can view her picture and judge whether she is under 12. That is black-letter law; it is also especially fair in this case because Defendant's choice of platform, Omegle, has prevented investigators from identifying this child and offering her help.

At a minimum, the minor depicted in Count Three was under 16, nor does Defendant argue otherwise. Defendant therefore merits at least a 2-level enhancement pursuant to USSG § 2G2.1(b)(1)(B).

C. Defendant Obstructed Justice by Deleting Evidence on His Phone.

Defendant claims that "[n]o conduct related to his personal cell phone occurred in the investigation, prosecution, or sentencing of the offense of conviction." [D.E. 126]

Two levels should be added to the base offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction…and any relevant conduct." USSG §3C1.1. This includes conduct that occurred before the start of the investigation for the instant offense if

7

the conduct was purposeful and likely to frustrate the investigation or prosecution of the offense. USSG §3C1.1 cmt. n. 1. Destroying or concealing material evidence triggers this enhancement. Id. cmt. n. 4(D).

Defendant obstructed justice. Summoned to meet with HCSO brass, he factory reset his Google Pixel phone and attempted to hide it from investigators. Then he lied to investigators days later when he said he had no recollection of even purchasing that phone and further disassociated himself with the device. The factory reset of his phone erased all data from his phone. That action forced investigators to get a search warrant for his cloud account that would have been linked to his phone to try to recover the data he had deleted. In that account, investigators found evidence constituting the basis of this indictment.

Two kinds of evidence connect Defendant's Google account data—including the contraband videos—to his wiped cell phone. First, three videos that Defendant was charged with possessing[2] indicate that Defendant recorded them on his phone. One is a 1:48 video, YouCut_20230404_063924821-1jb2p6kf05toi.mp4. It depicts Defendant texting a minor child, on Omegle, while masturbating, naked. As the child began fondling her genitals and masturbating, Defendant asked how old she was, and she responded 14. At the end of the recording, Defendant navigated to his screen recorder to end the recording. In the corner of the screen the words "Jonathan's Pix.." appears. The phone Defendant hid on the dumpster was a Google Pixel phone. During two other videos, a banner notification alerted Defendant of motion on the porch,

---

[2] Because of imprecise metadata.

8

Case 5:24-cr-00073-FL    Document 129    Filed 08/28/25    Page 8 of 16

apparently from a Ring Doorbell camera system. The notification appeared to be a cell phone banner.

The Government will have all three recordings available at sentencing along with screen shots for the Court's review.

Second, other, noncontraband videos and images saved to Defendant's Google Cloud account appear to come from his cell phone. For example, the account saved numerous pictures of Defendant at his home, wearing his uniform, with his children, pictures of his dogs and family—the kinds of personal pictures people ordinarily take and save on their cell phones.

Defendant's Google account also preserved multiple videos of Defendant utilizing Omegle to engage in sexualized conversations with other adults; three videos show Defendant using his cell phone during the conversations. In two of the videos, Defendant navigated to CashApp to pay young adult women for exposing their breasts and genitals while he masturbated, and the home screen of his cellular device, including the applications installed, is visible. In the third video, when Defendant navigated to Snapchat to get one of his account names to pass along to the female, the phone number for his Snapchat account is visible: it matches the same phone number as the Google Pixel phone that Defendant attempted to hide. The Government will have all three of these videos, in their entirety to show to the Court at sentencing.

Thus, significant evidence indicates that Defendant's Google Drive account saved data—including videos—that Defendant produced and saved on his erased

9

cellular phone. But even if the Government did not have that evidence, Defendant's objection merely underscores why the obstruction enhancement applies. It's true the United States cannot confirm whether most of the contraband videos were saved on his phone: he *destroyed that evidence.* It would be nonsensical to require the government to prove, when seeking an obstruction enhancement, what was on a device a defendant wiped.

The defendant cites no law supporting his argument. Instead, courts have routinely upheld applying the obstruction enhancements when defendants have erased or attempted to erase digital evidence. E.g., United States v. Cheatham, 601 F. App'x 194, 200 (4th Cir. 2015) (unpublished) (citing United States v. Malki, 609 F.3d 503, 511) (2nd Cir. 2010); United States v. Schwartz, 698 F. App'x 799, 803 (6th Cir. 2017) (unpublished) (defendant deleted his Google account after learning he was being investigated for child pornography); United States v. Flores, 802 F.3d 1028, 1047-48 (9th Cir. 2015) (defendant asked her cousin to delete her Facebook account); United States v. Morris, 573 F. App'x 712, 728 (10th Cir. 2014) (unpublished) (defendant directed clients to delete emails); see also United States v. Roads, 97 F.4th 1133, 1138 (8th Cir. 2024) (defendant was evasive with law enforcement about his passcode and the contents of his phone and attempted to deactivate the application he used to distribute child sexual abuse material).

D. Defendant Is a Repeat and Dangerous Sex Offender under Settled Law.

Defendant objects to the 5-level enhancement applied pursuant to USSG § 4B1.5 for being a repeat and dangerous sex offender. Defendant argues the dates

the Government acquired for the videos do not reflect the dates of the interaction with the minor children but, rather, the dates Defendant went back and edited the videos.

The Government must show that "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." USSG §4B1.5 cmt. n. 4(b)(i). Prohibited sexual conduct includes production of child pornography. USSG §4B1.5 cmt. n. 4(A). An occasion of prohibited sexual conduct may be considered regardless of whether it occurred during the instant offense or resulted in a conviction for the conduct. USSG §4B1.5 cmt. n. 4(B)(ii).

Section 4B1.5(b)(1) "can be applied either to repeated abuse of a single minor or separate abuses of multiple minors." *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1220 (10th Cir. 2022). In a different context, the Supreme Court identified factors that indicate whether events happened on different occasions, including (1) proximity of time, evidence or lack thereof, of an uninterrupted spree of behavior; (2) presence of intervening events; (3) proximity of location; (4) character and relationship of the offenses. Wooden v. United States, 595 U.S. 360, 369 (2022).

A sister circuit applied the Wooden factors and held the abuse of two victims that occurred in the same day but at different times and in different rooms constituted the basis for a pattern of activity involving the sexual abuse of children for USSG §2G2.2(b)(5). United States v. Bullock, --- F.4th ---, 2025 WL 2423493, at *18 (2d Cir. Aug. 22, 2025). The court specifically found there were non-criminal acts that separated the two sets of abuse and, while the acts were similar in nature and motive, they were not part of a single overarching scheme. Id. at 18-19.

11

Case 5:24-cr-00073-FL    Document 129    Filed 08/28/25    Page 11 of 16

No evidence suggests that Defendant produced fourteen videos of child sexual abuse material in one crime spree. The only metadata available (thanks, likely, to Defendant's obstruction) indicates that the videos were produced on different days over several months in 2022. Despite retaining a forensics expert, Defendant has provided no evidence showing that the videos were recorded at the same time.

The videos' contents indicate that they were created at different times in different places. Each child is obviously a different person. In the fourteen videos, he wore four different colors of shirts—dark gray, light gray, red and black—and sometimes no shirt at all. He recorded the videos in different locations: in one background there is a door frame on the left side of the video; in another, a window is above him, and in an nother he is in bed with a headboard behind him.

And Defendant's argument defies logic. Investigators found *fourteen* videos spanning 53:55 minutes depicting Defendant masturbating while directing children to sexually abuse themselves. The idea that Defendant went on such an extreme child sexual abuse spree in one sitting is ridiculous. And in at least three of the videos, Defendant masturbates to the point of ejaculation. It is implausible that he masturbated to ejaculation and then immediately then skipped to another child and began masturbating to that child's image too.

This Court should reject Defendant's latest, preposterous attempt to minimize his conduct and label him what the evidence proves he is: a repeat and dangerous sex offender.

E. <u>30 Years Is the Sentence Sufficient but Not Greater Than Necessary to Punish Defendant for His Egregious Crimes.</u>

This Court is familiar with the relevant sentencing factors. They include the defendant's characteristics; the nature and circumstances of the offense; the need to punish the instant offense, promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence; and the need to protect the public from the defendant's future crimes. 18 U.S.C. § 3553(a).

As for the nature and circumstances of the offense, the seriousness of this offense cannot be overstated. Defendant victimized *fourteen* minor children. When he was connected to minor children on Omegle, he took full opportunity to exploit them and have them expose their genitals, masturbate, and insert foreign objects into their vaginas for his sexual pleasure. He would ask their age and when they would confirm they were minors, Defendant was not deterred but kept exposing himself and asking the minors to undress for him and engage in masturbation. His messages were not just wrong; they were dirty, depraved, and remorseless.

Additionally, Defendant engaged in conversations with others who were streaming child sexual abuse material. He confirmed he was "into" 13-year-olds or younger with his preferred age and act being 12- to 13-year-old children masturbating. In at least one of these videos, the individual streaming the child sexual abuse material was streaming three videos at once depicting multiple children. One of these depicted a known series, Maria of the Best Necklace series.

The harms to children because of sexual abuse have been well documented. The presence of their abuse images on the internet fuels their harm and makes it

13

nearly impossible for those children to move forward and completely heal. Defendant took advance of elementary-school-aged children to satisfy his sick sexual desires.

In addition, this Court should examine the history and characteristics of Defendant. Id. What is true about Defendant is true of so many others convicted of similar crimes. He had a job, an education and a family support system. There is no evidence of childhood trauma, no major physical health conditions, no substance abuse issues. Despite having so many opportunities and support and abilities, Defendant chose to victimize the most vulnerable parts of our population. He has, literally, no excuse for his conduct.

It is bad enough when members of the general public exploit children so shamelessly. But Defendant was a *sworn law enforcement officer*. He was in a position of trust in the community; he was someone families called when their children needed emergency help. Instead of honoring that responsibility, he sexually harassed an inmate, obstructed justice, and anonymously abused children online. His behavior undermines public trust in police and tarnished the badge for all law enforcement.[3]

Defendant's guidelines objections are meritless. But if the Court were to sustain Defendant's objections to the PSR, the Government would ask for an alternate variance sentence to reflect the number of children, the age of the children involved, the repeated nature of this conduct and Defendant's, seeming, total lack of

---

[3] Indeed, journalists have documented how uniquely devastating child sexual abuse by law enforcement officers is. Jessica Contrera et al., "The Post Investigated Cops Accused of Sexually Abusing Kids. Here's What We Learned.," *The Washington Post* (Dec. 19, 2024), https://www.washingtonpost.com/investigations/2024/12/19/police-officers-child-sexual-abuse-investigation-explained/.

14

remorse. Thirty years is the sentence sufficient but not greater than necessary to send an unfortunately necessary message to Defendant, victims, and the public: Sexually abusing children is a terrible wrong. Doing so as a law enforcement officer is horrifying.

## **CONCLUSION**

Despite swearing to protect the public and uphold the law, Defendant was caught sexually harassing a female inmate and exploiting young children on Omegle for his own sexual pleasure. He, rightly, faces a significant sentence for the harms that he has created for these children. For the foregoing reasons, this Court should overrule the defendant's guidelines objections and impose a guideline range sentence.

Respectfully submitted this 28th day of August, 2025.

                                                       W. ELLIS BOYLE
                                                     United States Attorney

| | |
|---|---|
| */s/ Charity L. Wilson* | */s/ Erin C. Blondel* |
| CHARITY WILSON | ERIN C. BLONDEL |
| Criminal Division | Criminal Division |
| U.S. Attorney's Office, EDNC | U.S. Attorney's Office, EDNC |
| 300 North 3rd Street, Suite 120 | 150 Fayetteville Street, Suite 2100 |
| Wilmington, North Carolina 28401 | Raleigh, North Carolina 27601 |
| charity.wilson@usdoj.gov | erin.blondel@usdoj.gov |
| Telephone: 919-628-9975 | Telephone: 919-856-4458 |
| NC Bar No. 31584 | NC Bar No. 46977 |

CERTIFICATE OF SERVICE

    This is to certify that I have this 28th day of August, 2025 served a copy of the foregoing upon counsel for the defendant in this action by email and by electronically filing the same with the Clerk of Court via the CM/ECF system, which will send notification of such filing to:

Elisa Cyre Salmon
Attorney for Defendant

                                     W. ELLIS BOYLE
                                     United States Attorney

*/s/ Charity L. Wilson*
CHARITY WILSON
Criminal Division
U.S. Attorney's Office, EDNC
300 North 3rd Street, Suite 120
Wilmington, North Carolina 28401
charity.wilson@usdoj.gov
Telephone: 919-628-9975
NC Bar No. 31584

*/s/ Erin C. Blondel*
ERIN C. BLONDEL
Criminal Division
U.S. Attorney's Office, EDNC
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
erin.blondel@usdoj.gov
Telephone: 919-856-4458
NC Bar No. 46977